IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00885

SONY MUSIC ENTERTAINMENT ESPAÑA, S.L., and
ULTRA RECORDS, LLC,

       Plaintiffs,

v.

MOODY II LLC T/A MOODY RECORDINGS,
JONAS TEMPEL, and
WILLIAM RENKOSIK p/k/a DJ BAD BOY BILL,

       Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Sony Music Entertainment España, S.L. ("Sony Spain") and Ultra Records, LLC ("Ultra"), by their attorneys, Adelman Matz, P.C., for their complaint against defendants Moody II LLC T/A Moody Recordings ("Moody"), Jonas Tempel ("Tempel") and William Renkosik P/K/A DJ Bad Boy Bill ("Renkosik") (collectively "Defendants") alleges as follows:

### NATURE OF THE CASE

1. This is an action by Plaintiffs for copyright infringement, breach of a license agreement and alter ego.

### JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action alleges violations of a federal statute, namely the Copyright Act of 1976, 17 U.S.C. §§101, *et seq.*

1

3. Upon information and belief, this Court has personal jurisdiction over Defendants as they reside in the State of Colorado, and Moody is organized and existing under the laws of the State of Colorado.

4. Upon information and belief, venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b) because Moody resides within the District.

## NATURE OF THE PARTIES

5. Plaintiff Sony Spain is a private limited company duly formed and existing under the laws of Spain.

6. Plaintiff Ultra is a limited liability company duly formed and existing under the laws of the State of Delaware.

7. Upon information and belief, Moody is a limited liability company duly formed under the laws of the State of Delaware with its principal place of business at 5215 West Dorado Court, Littleton, CO 80123.

8. Upon information and belief, Tempel is an individual residing in Colorado.

9. Upon information and belief, Renkosik is an individual residing in Colorado.

## FACTUAL BACKGROUND

10. Plaintiffs are both record labels that distribute and otherwise exploit sound recordings.

11. Upon information and belief, on June 9, 2014, Sony Spain and Moody II LLC t/a Moody Recordings ("Moody") entered into a written Exclusive License Agreement dated June 9, 2014 (the "Exclusive License Agreement"), which granted Sony Spain the exclusive rights in and to the track "Dancin" (the "Track").

12. Pursuant to the Exclusive License Agreement, the Track is referred to as the "Licensed Product" which was described as having been "delivered by Licensor at Sony [Spain's] full technical artistic and commercial satisfaction and ready for manufacture according to music industry standards (i.e. a fully edited, equalized, and leadered mastertape comprising all available mixes and remixes, B-sides, edits and versions thereof such as, without limitation, audiovisual formats, extended editions, radio edits, other language versions, live versions, remixes, edits or acapella versions as well as the musical parts for remixes or productions separate instruments for future remixes, and also including consents, clearances and a full label copy, and any artwork, and graphic, audiovisual (including music videos) and/or other materials" except the "Laidback Luke Remix".

13. Pursuant to the Exclusive License Agreement, Moody "exclusively assign[ed] to Sony [Spain] … the rights of reproduction, distribution, public communication and making available of the Licensed Product, both as individual sound and/or audiovisual recordings and as a whole within the relevant album(s), in any means, format, support and/or phonographic and/or audiovisual and/or multimedia system now known and/or hereinafter devised, and in the widest extent possible for Sony [Spain] to be able to peacefully carry out the exploitations under" the Exclusive License for ten (10) years from the Commencement Date, throughout the World (except Belgium, the Netherlands and Luxembourg).

14. Pursuant to Sony Spain's express right to do so under the Exclusive License, and by a written agreement, Sony Spain granted Ultra the exclusive rights to the Licensed Product in the United States and Canada.

15. Upon information and belief, sometime in 2019, Defendants created an unauthorized version of the Track "Dancin" (the "Infringing Product") which pursuant to the express terms of the Exclusive License Agreement, constitutes "Licensed Product".

16. Thereafter Defendants engaged in, and authorized, the reproduction, distribution, public communication of and making the Infringing Product available through *inter alia* various digital music streaming, distribution and download platforms, including but not limited to Spotify, Amazon Music and iTunes just to name a few, in the United States, Canada and other territories around the world such as the United Kingdom, Spain and many others where Plaintiffs maintain the exclusive rights to distribute and otherwise exploit the Licensed Product.

17. Upon information and belief, the creation and above exploitation of the Infringing Product was undertaken at the direction of and with the authorization of Renkosik and Tempel.

18. Upon information and belief, all of Defendants' actions were undertaken in and directed from the United States.

19. Upon information and belief, all of Defendants' actions were undertaken without permission or authorization from either of the Plaintiffs.

20. Upon information and belief, Defendants' foregoing exploitation of the Infringing Product has received more than two hundred million streams on Spotify alone, which has resulted in hundreds of thousands of dollars of lost revenue to Plaintiff.

21. In addition, Defendants' exploitation of the Licensed Product, including the Infringing Product, has caused Plaintiffs irreparable harm, including but not limited to by diluting the popularity of the Licensed Products that Plaintiffs are exploiting.

22. As a result of many hundreds of millions of the streams and plays being accredited to Defendants' Infringing Product, instead of the versions that Plaintiffs have been exploiting,

the non-infringing Licensed Product has been deprived of much of its stream count, which directly impacts promotion of the Licensed Product.

23. For example, on Spotify, Plaintiffs' authorized Licensed Product has approximately 711,000,000 streams, and the Infringing Product has 207,000,000 streams, which represents approximately 22.5% of all stream count on Spotify alone.

24. Not only does that deprive Plaintiffs of the significant revenue from those streams, it causes other damage that is difficult to quantify.

25. Specifically, the popularity of a track on various streaming services, which is determined in large part by its play count, has a direct correlation to the opportunities for promotion and additional placement by the streaming service and other third party potential licensors. As just one example, tracks with a high stream count are often provided placement on popular playlists or given other forms of promotion. They are also often chosen for sync licenses and other commercial opportunities that would further increase the popularity of the track and thus increase streams, downloads and other licensing revenue for the track, the loss of which is difficult to quantify.

26. Upon information and belief, Defendants have continued exploitation of the Infringing Product, without turning over the rights to same to Plaintiffs, after Defendants were made aware by Plaintiffs that their exploitation was without permission or authorization.

## COUNT I

### COPYRIGHT INFRINGEMENT
### (Plaintiffs against All Defendants)

27. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 26 as above as if fully set forth herein.

5

28. Sony Spain was assigned and given all exclusive rights in and to the Licensed Product throughout the World (except Belgium, the Netherlands and Luxembourg).

29. Ultra, through Sony Spain, is the exclusive Licensee of the Licensed Product, in the United States and Canada.

30. The Track has been registered with the United States Copyright Office with a Registration No. SR 753-818.

31. Upon information and belief, as set forth above, Defendants created a version of the Track, i.e. the Infringing Product.

32. Upon information and belief, the Infringing Product was an unauthorized derivative and an unauthorized reproduction of the Track.

33. Upon information and belief, Defendants further reproduced the Infringing Product when they provided the Infringing Product to third party distributors in the United States for further distribution.

34. Upon information and belief, the foregoing acts of direct infringement were completed by Defendants while they were in the United States.

35. Upon information and belief, thereafter Defendants and their third party distributors further reproduced, publicly performed and distributed the Infringing Product in the United States, Canada, United Kingdom, Spain and many other territories which Plaintiffs have the exclusive right to.

36. Upon information and belief Plaintiffs have suffered damages flowing from the exploitation abroad of the domestic acts of infringement committed by Defendants.

37. Upon information and belief, Defendants have continued to use and exploit the Infringing Product, after being notified by Plaintiffs that their use was without permission or

authorization, in the United States, Canada, United Kingdom, Spain and many other territories which Plaintiffs have the exclusive right to, in violation of Plaintiffs' exclusive rights in and to the Track.

38. Upon information and belief, Copyright Act codified as 17 U.S.C. §101 *et seq*, grants to legal copyright owners certain exclusive rights to do and authorize others to do the exclusive acts enumerated in 17 U.S.C. §106.

39. Upon information and belief, by virtue of the assignment and exclusive license conveyed to Sony Spain, Sony Spain is the legal owner of the copyright pursuant to the Copyright Act throughout the World (except Belgium, the Netherlands and Luxembourg).

40. Upon information and belief, by virtue of the exclusive license conveyed to Ultra by Sony Spain, Ultra is the legal owner of the copyright pursuant to the Copyright Act in the United States and Canada.

41. Upon information and belief, as the beneficial owner i.e. one who has given up the "exclusive 'use' rights in exchange for a sales percentage or royalties derived from the exploitation of the copyright" Moody no longer has any "independent right to use or license the use of the copyright" in or to the Track throughout the World (except Belgium, the Netherlands and Luxembourg).

42. Upon information and belief, Defendants' foregoing acts and continued acts as alleged herein violating Plaintiffs' exclusive rights were willful, deliberate, and committed with prior notice and knowledge that they did not have the rights to engage in those acts.

43. Upon information and belief, Defendants are likely to continue infringing Plaintiffs exclusive rights in and to the Track unless they are enjoined from further infringement.

44. Upon information and belief, the infringing acts of Defendants have been, are, and if continued hereafter, will continue to be committed willfully.

45. As a direct and proximate result of their actions, Defendants are liable to the Plaintiffs for willful copyright infringement under 17 U.S.C. § 501, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106, and Plaintiffs are entitled to receive actual damages, the profits made by the Defendants from their wrongful acts or in the alternative, statutory damages pursuant to 17 U.S.C. §504, as well as costs and attorney's fees.

46. Plaintiffs have suffered, and will continue to suffer, actual losses in an amount not yet ascertained but to be determined at trial.

47. Unless and until Defendants' conduct is enjoined by this Court, Defendants will continue to cause irreparable injury that cannot fully be compensated for or measured in money and as such, Plaintiffs are also entitled to a preliminary and permanent injunction pursuant to 17 U.S.C. § 502 prohibiting further infringement of their exclusive rights under the Copyright Act.

## COUNT II

### CONTRIBUTORY INFRINGEMENT
### (Plaintiffs against All Defendants)

48. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 47 above as if fully set forth herein.

49. Upon information and belief, the Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction, distribution, public performance and other exploitation of the Infringing Product.

50. Upon information and belief, the Defendants have engaged in willful contributory copyright infringement by materially contributing to and assisting third parties, including online distributors, in distributing the Infringing Product.

51. Upon information and belief, as a result of Defendants' actions third parties have engaged in the illegal reproduction, public performance, and distribution of the Infringing Product.

52. Upon information and belief, Defendants have profited from their inducement, participation in and aiding and abetting such acts.

53. Plaintiffs suffered, and will continue to suffer, losses in an amount not yet ascertained but to be determined at trial. In addition to Plaintiffs' actual damages, Plaintiffs are entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b).

54. As a result of its actions, Defendants are liable to the Plaintiffs for willful copyright infringement under 17 U.S.C. § 501.  Plaintiffs suffered, and will continue to suffer, losses in an amount not yet ascertained but to be determined at trial.  In addition to Plaintiffs' actual damages, Plaintiffs are entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b).

55. In the alternative, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c).

56. Plaintiffs are also entitled to recover their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT III

### VICARIOUS INFRINGEMENT
### (Plaintiffs against All Defendants)

57. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 56 above as if fully set forth herein.

58. Upon information and belief, the Defendants are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct, and because they had a direct financial interest in the infringing activity.

59. Upon information and belief, Defendants knew, or should have known, that they, their agents, representatives, and distributors were not authorized to reproduce, perform, or distribute the Infringing Product in any capacity.

60. Upon information and belief, the reproduction of the Track and the distribution of the Infringing Product by the Defendants occurred while the Defendants had the right and ability to supervise the infringing actions of third parties.

61. Upon information and belief, the Defendants controlled and authorized how the Infringing Product would be distributed.

62. Upon information and belief, by controlling and authorizing the distribution of the Infringing Product, the Defendants have engaged in willful vicarious copyright infringement.

63. By reason of the Defendants' acts of copyright infringement as alleged herein, Defendants have obtained profits they would not otherwise have realized but for Defendants' infringement of the Licensed Product. As such, Plaintiffs are entitled to disgorgement of the Defendants' profits attributable to Defendants' infringement, in an amount to be established at trial. Additionally, Plaintiffs are entitled to receive actual damages pursuant to 17 U.S.C. § 504(b).

64. As a result of their actions, Defendants are liable to the Plaintiffs for willful copyright infringement under 17 U.S.C. § 501. Plaintiffs suffered, and will continue to suffer, losses in an amount not yet ascertained but to be determined at trial. In addition to Plaintiffs'

actual damages, Plaintiffs are entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b).

65. In the alternative, as a result of Defendants' acts of copyright infringement, as alleged above, which were willful, intentional, and malicious, Defendants are liable for statutory damages under section 504(c)(2) of the Copyright Act in the sum of up to $150,000 per infringement.

66. Plaintiffs are also entitled to recover their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT IV

## BREACH OF CONTRACT
### (Sony Spain against Moody)

67. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 26 as above as if fully set forth herein.

68. The Exclusive License Agreement constitutes a valid and binding agreement between Sony Spain and Moody.

69. Sony Spain has substantially performed under the Exclusive License Agreement.

70. Pursuant to the Exclusive License Agreement, Moody "exclusively assign[ed] to Sony [Spain] … the rights of reproduction, distribution, public communication and making available of the Licensed Product".

71. Moody's distribution, making available and exploitation of the Licensed Product, including the Infringing Product, are prohibited by the express terms of the Exclusive License Agreement.

72. Despite this exclusive assignment, Moody has reproduced, distributed, publicly communicated and made the Licensed Product available in violation of the Exclusive License

11

Agreement in various territories around the world, including in the United States, Canada, United Kingdom, Spain and many other territories which Plaintiffs have the exclusive right to.

73. Moody's actions constitute a willful and material breach of same.

74. As a direct and proximate result of Moody's material breaches of the Exclusive License Agreement, Sony Spain has suffered damages in an amount that is currently unknown, which will be determined at trial, but that is believed to be in excess of one million dollars ($1,000,000).

75. In addition to the foregoing, Moody's willful and material breaches of the Exclusive License Agreement deprived Sony Spain of the main benefit of its bargain i.e. that it would be the exclusive licensee of the Licensed Product for ten (10) years which would allow it to benefit from the long-term success and promotional activities of the Track.

76. As a result of Moody distributing and making available a competing version of the Track i.e. the Infringing Product, the Track that is authorized by Plaintiffs is having to compete with the Infringing Product for stream counts.

77. Upon information and belief, the Infringing Product has more than two hundred million streams on Spotify alone.

78. Upon information and belief, as a direct and proximate result, Plaintiffs' version of the Track has lost licensing opportunities and other promotional opportunities, such as being included on popular playlists and receiving other third-party promotional offers, that would further increase the streams and downloads, in an amount that is difficult to quantify.

79. Upon information and belief, this loss constitutes irreparable harm in addition to a material breach of the Exclusive License Agreement.

80. As set forth herein, money damages will not properly compensate Sony Spain for the loss of the bargain i.e. ten (10) years of exclusivity because the legal remedy of compensation will be inadequate.

81. As a direct and proximate result of its actions, Moody is liable to Sony Spain in the amount of all monies received from the exploitation of the Infringing Product.

82. As a direct and proximate result of the foregoing, Sony Spain is also entitled to an order extending the Exclusive License Agreement by the amount of time that Moody has been in material breach of same, i.e. at least four (4) years, to put the parties in the same position they would have occupied had the Exclusive License Agreement been performed according to its terms.

## COUNT V

### ALTER EGO
### (Against Tempel and Renkosik)

83. Plaintiffs repeats and re-alleges each and every allegation of paragraphs 1 through 82 as above as if fully set forth herein.

84. Upon information and belief, Tempel and Renkosik formed Moody in July of 2013.

85. Upon information and belief, Moody has never had, and does not now have, any genuine or separate corporate existence, and was formed to permit Tempel and Renkosik to transact business under a corporate guise and attempt to shield Tempel and Renkosik from personal financial liability from creditors, including but not limited to Plaintiffs.

86. Upon information and belief, Tempel and Renkosik are the sole owners and members of Moody.

87. Upon information and belief, there is complete domination and control of Moody by Tempel and Renkosik and Moody has no business discretion outside the whims of Tempel and Renkosik.

88. Upon information and belief, there has been a co-mingling of funds and other assets between Moody, on the one hand and Tempel and Renkosik, on the other.

89. Upon information and belief, Tempel and Renkosik improperly use Moody's funds for personal expenses.

90. Upon information and belief, Moody received funds for Tempel and Renkosik so Plaintiffs would be unable to recover for Moody's material breaches of the Exclusive License Agreement and copyright infringement.

91. Upon information and belief, there has been a failure to maintain corporate formalities, including but not limited to failing to keep corporate documents.

92. Upon information and belief, Moody was used as a mere shell, instrumentality or conduit for the business of Tempel and Renkosik.

93. Upon information and belief, there has been disregard of legal formalities.

94. By way of just one example, Moody repeatedly failed to file periodic reports that were due and was held in delinquency in 2014.

95. Upon information and belief, there has been a diversion of assets of Moody by Tempel and Renkosik to the detriment of creditors (including Plaintiffs) and/or the manipulation of assets and liabilities (including but not limited to cost-sharing) between Moody, on the one hand and Tempel and Renkosik, on the other.

96. Upon information and belief, the above domination of Moody by Tempel and Renkosik was to shield creditors from Tempel and Renkosik's personal liability from creditors such as Plaintiffs.

97. Upon information and belief, as a result of the foregoing, Moody is the alter ego of Tempel and Renkosik, and as such, should be liable for the liabilities and bad acts of Moody as set forth in all of the foregoing counts I-IV above.

**WHEREFORE,** Plaintiffs respectfully request judgment against the Defendants as follows:

  i. On the first claim,
      a. For an injunction against Defendants and their agents, servants, employees, representatives, affiliated companies and other business entities successors, assignees and those acting in concert with them or at their direction, from directly or indirectly reproducing, downloading, distributing, communicating to the public, uploading, linking to, transmitting, publicly performing or otherwise exploiting in any manner the Infringing Product.
      b. For a judgment that Defendants have infringed Plaintiffs' rights in the copyright in the Licensed Product under 17 U.S.C. §501, and that the infringement by the Defendants was willful;
      c. For damages suffered by Plaintiffs as a result of the infringement complained of herein, as well as disgorgement of any profits attributable to Defendants' infringement, including the value of all gains, profits, advantages, benefits, and consideration derived by Defendants from and as a result of their infringement

    of Plaintiffs' rights in the Licensed Product, in an amount to be determined at trial;

  d. In the alternative, if Plaintiffs so elect, in lieu of recovery of their actual damages and the Defendants' profits, for an award of statutory damages against Defendants, for their willful acts of copyright infringement;

  e. That Defendants, and their members, managers, officers, agents, and employees, and all persons acting in concert with them, be permanently enjoined from infringing, reproducing, distributing, displaying, broadcasting, publishing, licensing, exploiting or making derivative works from the Track in any manner;

  f. For costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

 ii. On the fourth claim, a judgment in an amount of all monies received by Moody from the exploitation of the Infringing Product and an order extending the Exclusive License Agreement by the amount of time that Moody has been in material breach of same, to put the parties in the same legal position they would have occupied had the Exclusive License Agreement been performed according to its terms;

 iii. On the fifth cause of action, that Tempel and Renkosik be declared the alter ego of Moody, and as such Tempel and Renkosik should be liable for Moody's wrongdoing as set forth in counts I-IV, jointly and severally;

 iv. That any judgment be entered against Defendants jointly and severally; and

 v. any such further relief as this Court may deem equitable, just, and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all claims for relief and issues triable by jury.

| | |
|---|---|
| Dated: New York, New York<br>April 10, 2023 | Respectfully submitted,<br><br>_____<br>Sarah M. Matz, Esq.<br>ADELMAN MATZ, P.C.<br>1179 Second Avenue, Suite 153<br>New York, New York 10065<br>Phone: (646) 650-2207<br>Email: sarah@adelmanmatz.com<br>*Attorneys for Plaintiffs Sony Music Entertainment España, S.L., and Ultra Records, LLC* |

17