# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00885-CNS-SBP

SONY MUSIC ENTERTAINMENT ESPAÑA, S.L., and
ULTRA RECORDS, LLC,

    Plaintiffs,

v.

MOODY II LLC T/A MOODY RECORDINGS,
JONAS TEMPEL, and
WILLIAM RENKOSIK, p/k/a DJ Bad Boy Bill,

    Defendants.

---

## ORDER GRANTING MOTION TO AMEND ANSWER

**Susan Prose, United States Magistrate Judge**

    This matter is before this court on Defendants' motion to amend their answer to add counterclaims. ECF No. 44 (the "Motion), ECF No. 44-1 (public, redacted version of proposed amended pleading), ECF No. 46-1 (confidential version of proposed, second amended answer adding counterclaims; for simplicity, this court refers to the proposed amendment as the "Counterclaims"). The Motion is referred. ECF No. 45. Having carefully considered the briefing and proposed amended pleading, this court respectfully GRANTS the motion as follows.[1]

---

[1] "Whether motions to amend are dispositive is an unsettled issue in the 10th Circuit." *Cano-Rodriguez v. Adams Cty. Sch. Dist. No. 14*, No. 19-cv-01370-CMA-KLM, 2020 WL 6049595, at *1 n.2 (D. Colo. July 23, 2020), *report and recommendation adopted*, 2020 WL 4593219 (D. Colo. Aug. 11, 2020). Courts in this District have treated orders granting motions to amend as non-dispositive, but "many courts have held that a recommendation to deny a motion to amend . . . should be viewed as a dispositive ruling because it precludes the filing of certain claims."

I. Background

The court takes the following facts from the Complaint, Answer, and docket. The court does not purport to exhaustively summarize the pleadings or procedural history, but only notes the background necessary for ruling on the Motion.

This is a copyright infringement case. Plaintiffs are Sony Music Entertainment España, S.L., and Ultra Records, LLC (collectively, "Sony"), who filed this action on April 10, 2023. ECF No. 1 ("Complt."). Sony alleges that pursuant to an exclusive license agreement it entered with Defendant Moody II LLC t/a Moody Recordings in 2014, Sony has the exclusive rights (except in Belgium, the Netherlands, and Luxembourg) to an audiorecording and song which it refers to as "the track 'Dancin.'" *Id*. ¶¶ 11, 13. Sony further alleges that pursuant to the license agreement, its exclusive rights include all versions of "Dancin" except the "Laidback Luke Remix." *Id*. ¶¶ 12, 13. Under the contract, Sony pays royalties to Moody in exchange for those rights. *Id*. ¶ 41.

Sony alleges that despite having contractually given those rights to Sony, Defendants (Moody II LLC, Jonas Tempel, and William Renkosik, p/k/a DJ Bad Boy Bill, collectively referred to here as "Moody") made an unauthorized version of "Dancin" (the "Infringing Product") and then "engaged in, and authorized, the reproduction, distribution, public communication of and making the Infringing Product available through inter alia various digital

---

*Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2021 WL 941828, at *2 n.1. (D. Colo. Mar. 11, 2021); *Bullock v. Daimler Trucks N. Am., LLC*, No. 08-cv-00491-PAB-MEH, 2010 WL 1286079, at *1 (D. Colo. Mar. 29, 2010) (observing that it "makes good sense" to distinguish between allowing and denying an amendment in considering whether to use an order or recommendation as a magistrate judge). Because this court finds that the Motion to Amend should be granted, this court proceeds by order rather than recommendation.

2

music streaming, distribution and download platforms" in the territories where Sony has the exclusive rights to do so. *Id*. ¶ 16.

Based on those and other facts alleged in the Complaint, Sony sues all Defendants for several forms of copyright infringement (direct, contributory, and vicarious). Complt. at 5-11 (Counts I, II, and III). Sony also sues Moody II LLC (but not Messrs. Tempel or Renkosik) for breach of the license agreement. *Id*. at 11-12 (Count IV). Finally, Sony claims that Messrs. Tempel and Renkosik are alter egos of Moody II LLC and are on that basis liable for "the liabilities and bad acts of Moody" set forth in the preceding counts. *Id*. at 13-15.

Moody originally answered on July 10, 2023. ECF No. 20. It filed a first amended answer shortly thereafter, on July 18, 2023. ECF No. 24. This court entered a scheduling order on July 20, 2023. ECF No. 26. The court set the pretrial deadlines for the case and noted among other things that the parties had "engaged in settlement discussions which are currently ongoing." *Id*. at 5. In part because the parties were discussing settlement, this court held status conferences soon after, on September 19, 2023 (ECF No. 33) and October 31, 2023 (ECF No. 39). In the latter conference, this court extended the deadline for amending pleadings and the discovery deadlines. *Id*.

Throughout the autumn of 2023, the parties continued to focus on attempting to negotiate a settlement. They stipulated to extending the deadline for Moody to file a motion to amend the answer "to include two (2) claims, i.e., (1) for an accounting and any and all monies found due; and (2) breach of contract for breaching the implied covenant of good faith and [fair] dealing by failing to go after copyright infringers of Moody's track." ECF No. 40. The stipulation to extend the deadline notes, however, that Sony did not consent to the proposed amendment. *Id*. This

3

court approved the stipulated extension of the deadline to amend the answer, to December 4, 2023. ECF No. 42. This court then held a third status conference on November 30, 2023. ECF No. 43. The court required a joint status report by December 20, 2023.

On the deadline to seek leave to amend, Moody filed its present Motion. ECF No. 44. It attaches a redlined version of the proposed amended pleading. ECF No. 44-1. However, the parties were also continuing to negotiate settlement. For six months, the parties filed unopposed motions to extend both the pretrial schedule and the briefing for the Motion. ECF Nos. 48, 53, 56, 60, 64. This court granted the extensions, but on June 4, 2024, this court noted that it would not grant further extensions of the briefing on the Motion. ECF No. 66.

On July 12, 2024, Sony timely opposed the Motion. ECF No. 67 (the "Resp."), ECF No. 68 (Declaration of Sarah Matz, attaching exhibits). After this court granted Moody's opposed motion to extend its reply deadline (ECF No. 71), Moody replied with declarations in support. ECF Nos. 72, 72-1, 72-2. The court having given prior leave (ECF No. 71), Sony filed a sur-reply with declarations in support. ECF No. 77, 78, 79.

In its proposed amendment, Moody seeks to add the two counterclaims that it identified in the November 16, 2023 stipulation. Its first counterclaim is for an "accounting and payment of any money found due for breach of contract," i.e., for any royalties that Sony owed but has not paid under the license agreement. Moody alleges that Sony "consistently and purposefully understates the royalties due to artists when it renders accounting statements, makes payments to its artists of substantially lower royalties than are due under the contracts based upon such accountings, and purposefully does so to realize greater income at the expense of artists."

Counterclaims at 17 ¶ 124. Moody seeks an accounting and payment of any royalties that Sony owes but has not paid since inception of the license agreement.

The second proposed counterclaim is for breach of the implied covenant of good faith and fair dealing in the license agreement. *See* Counterclaims at 15-19. Moody attaches the license agreement. *Id*. at 21-28. Moody alleges the license agreement contains several implied covenants that Sony has breached:

> (a) That the parties to the agreement shall carry out their terms in good faith and by dealing fairly with each other;
>
> (b) That none of the parties thereto shall act in such a manner as to destroy the other's expected fruits of the Exclusive License Agreement;
>
> (c) That Sony shall perform its obligations of exploiting the Licensed Product using that degree of care, skill and diligence expected of recording companies comparable to Sony at the time of execution of the Exclusive License Agreement and in good faith; and
>
> (d) Sony shall use its best efforts to affect maximum sales of the Licensed Product throughout the Territory for the benefit of both parties.

Counterclaims at 16 ¶¶ 122(a)-(d).

Sony opposes the proposed amendment on several grounds: undue delay, prejudice, bad faith, and futility. Resp. at 5-14. Of particular note, Sony argues the Counterclaims are futile in part because Moody pleads them under Colorado law, but the law of Spain governs the license agreement. Sony also argues that even if Colorado law governed the parties' dispute, Moody did not make a previous demand for accounting as required under Colorado law.

Moody disagrees that there is any reason to deny the Motion. It supplies a declaration of foreign law pursuant to Federal Rule of Civil Procedure 44.1. ECF No. 72-1. Moody also

supplies a declaration of one of its counsel in this case, Mark Passin, to support the accounting claim. ECF No. 72-2. Sony sur-replies on both of those issues, including its own declaration of foreign law. ECF Nos. 77-79.

II.      Legal Standards

Under Rule 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court has discretion whether to allow an amendment. *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1217 (10th Cir. 2022), *cert. denied sub nom. San Juan Cnty. v. Chilcoat*, 143 S. Ct. 1748 (2023)). The court exercises that discretion in accord with the Supreme Court's long-standing guidance:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also, e.g.*, *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019) (same).

"The party contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases." *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020).

"Prejudice to the opposing party is the single most important factor in deciding whether to allow leave to amend." *Golden Gate Petroleum of Nev. LLC v. Ferguson Crossing, LLC*, No. 19-cv-03564-RM-GPG, 2020 WL 10867650, at *2 (D. Colo. Aug. 18, 2020) (internal quotation

6

marks omitted, citing *Stender v. Cardwell*, No. 07-CV-02503-WJM-MJW, 2011 WL 1235414, at *3 (D. Colo. Apr. 1, 2011); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006)). *See also Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330–31 (1971) (holding that "in deciding whether to permit such an amendment, the trial court [i]s required to take into account any prejudice that [the non-movant] would have suffered as a result" and discussing the trial court's discretion even to permit reopening a trial to cure prejudice).

Meanwhile, "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *FidoTV Channel, Inc. v. Inspirational Network, Inc.*, No. 18-cv-02295-CMA-NYW, 2019 WL 4043940, at *4 (D. Colo. Apr. 29, 2019) (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013), *report and recommendation adopted,* 2019 WL 2950153 (D. Colo. July 9, 2019)). This court does not often find it efficient or appropriate to deny a proposed amendment on the basis of futility, preferring to instead address the merits (or lack thereof) of a proposed claim on dispositive motions:

> Denying a motion to amend based on futility is uncommon in this District and usually involves claims that are facially unsupported in the proposed amendment. *See, e.g.*, *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1044 (D. Colo. 2012) (finding a pro se plaintiff's proposed amendment to bring tort claims against Bank of America's chief executive officer futile because "[t]here is absolutely no factual support for the proposition that Defendant Moynihan 'approved of, sanctioned, directed, actively participated in, or cooperated in' any of the alleged wrongdoing").

*Crocs, Inc. v. Joybees, Inc.,* No. 21-cv-02859-GPG-SBP, 2023 WL 8851822, at *8 (D. Colo. Oct. 6, 2023) (noting it is relatively rare that this court recommends denying a proposed amendment as futile). *See also FidoTV*, 2019 WL 4043940, at *8 (largely granting motion to

7

amend complaint, recommending denial only as to a portion of claim that lacked factual allegations in support).

III. Analysis

A. Undue Delay, Bad Faith, and Prejudice?

The court begins with Sony's inter-related arguments of undue delay, bad faith, and prejudice. Sony argues that Moody unduly delayed because it first informed Sony that it might wish to bring the Counterclaims in August 2023, and waited until December 2023 to do so. Sony notes that although it previously outlined deficiencies in Moody's responses to discovery (as reflected in at least some of the minutes of the status conferences), Moody has not supplemented either its discovery responses or document productions. Resp. at 14. Little discovery has been completed, despite Sony having told Moody to proceed with litigating the case while the parties also discussed settlement. Sony argues that Moody's failure to respond to the discovery deficiencies is in bad faith, and that the Motion to bring the Counterclaims is another bad faith attempt to delay Sony from obtaining the damages it claims in this case. It is apparently the bad faith nature of the proposed amendment—and perhaps the fact that a year has passed since Sony filed this action—that would prejudice Sony.

There is a difference, however, between delay and *undue* delay:

> A party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time. The longer the delay, the more likely the motion to amend will be denied, as protracted delay with its attendant burdens on the opponent and the court, is itself a sufficient reason to withhold permission to amend.

*Minter*, 451 F.3d at 1205 (internal citations and quotations omitted). "Instead of focusing on "delay" or "lateness," courts deciding this issue look to the moving party's explanation of the

delay to determine whether the delay is undue." *Marathon Oil Permian, LLC v. Ozark Royalty Co., LLC*, No. 18-cv-548-NF-KHR, 2019 WL 13107380, at *2-3 (D. Wyo. Oct. 9, 2019) (citing *Minter*, 451 F.3d at 1206).

In this case, Moody explains its delay was occasioned by the parties' ongoing, substantial efforts to negotiate a settlement. The docket reflects that *both parties* considered those efforts substantial enough to have this court hold several status conferences (which is not this court's normal practice) and to support their several unopposed requests for extensions. In addition, Moody's delay in bringing the Motion was only from approximately August 2023 to December 2023. Given these circumstances, Moody provides sufficient explanation of the delay. Moody did not unduly delay.

Nor does this court see the Motion as a bad faith attempt to delay Sony's pursuit of its claims in this case. While Sony argues that Moody has failed to supplement its discovery responses and document productions, Moody responds that its understanding was that the parties "continued indefinitely" the timeline for doing so, while they continued to discuss settlement. Reply at 9. Moody of course must timely meet its discovery obligations just like any party before this court. But as Moody notes, the schedule (including the discovery cutoff) has been extended several times on unopposed motions. During the several months since Sony initially raised the discovery issues in a status conference, it has not sought a discovery conference concerning Moody's failure to supplement.

Meanwhile, this case is not yet set for trial. While the timeline may frustrate Sony, civil cases in this District often take well over a year to proceed to the final pretrial/trial preparation conference in which the case will be set for trial. Sony having essentially agreed to putting off

9

the pretrial deadlines while the parties focused on settlement efforts, this court does not see any unfair or undue prejudice to Sony in allowing Moody to bring the Counterclaims. If the parties need additional discovery on the Counterclaims, the current discovery cutoff (September 19, 2024) has not yet passed, and the parties can file a motion to extend the schedule in light of this court allowing Moody to file its Counterclaims.

      B.      *Futility?*

This leaves Sony's futility arguments. Sony argues that it agreed with Moody that the license agreement is governed by the law of *Spain*. *See* Counterclaims at 27 (Section 25 of the license agreement). But, Sony argues, Moody pleads the Counterclaims under *Colorado* law. Sony thus argues that the claims are futile because Moody did not plead them under the correct governing law. Sony also argues that even under Colorado law, Moody had to first demand an accounting before filing the claim seeking such relief, and Moody did not make such a pre-suit demand. Sony further argues that under Colorado law, the implied covenant of good faith claim fails because that covenant only applies to discretionary authority expressly granted in the license agreement, and Moody instead seeks to impermissibly add or change terms.

Moody responds that Colorado law makes an exception to the pre-suit demand for accounting, and that in any case, it *did* demand an accounting before it filed the Motion. ECF Nos. 72, 72-2. Moody also responds with a declaration from Alfonso González Gozalo, a lawyer licensed in Spain, opining that based on his review of the license agreement, Moody's proposed Counterclaims are "in accordance with Spanish Law." ECF No. 72-1. Mr. González Gozalo provides several pages of reasoning in support of those opinions. *Id.*[2]

---

[2] Federal Rule of Civil Procedure 44.1 permits the court "in determining foreign law" to consider

With its Sur-Reply, Sony argues that Moody inappropriately relies on settlement discussions for proof of its demand for an accounting. Sony also provides a rebuttal declaration from Juan Luis Gracia, a lawyer licensed in Spain, opining that the Counterclaims are not in accordance with Spanish law and rebutting Mr. González Gozalo's opinions. *See* ECF No. 79. Mr. Gracia likewise provides several pages of reasoning in support of his opinions; he also attaches exhibits of Spanish law. ECF Nos. 79-2, 79-3.

This court has carefully reviewed the briefs and declarations. While Sony "may very well have legitimate and compelling arguments regarding the alleged futility" of the Counterclaims, "[w]hen viewing a motion to amend in light of the liberal rules regarding amendments of complaints, factual disputes cannot typically be decided on the pleadings, and are improper to address in the context of a motion to amend." *Marathon Oil*, 2019 WL 13107380, at *4 (declining to find implied duty of good faith claim was futile and allowing amendment). Here, Moody attaches the license agreement to the Counterclaims, but it is asking this court to determine how that contract should be interpreted, to decide whether Moody's proposed Counterclaims add to or modify it. Sony cites caselaw dismissing on such a basis, but it does not cite any case (nor has this court found), denying a motion to amend to add an implied covenant of good faith claim because it was futile. To the contrary, the court has found examples in which courts allowed an amendment to bring such a claim and leave the legal merits to future dispositive motions. *See, e.g.*, *Blixseth v. Cushman & Wakefield of Colo., Inc.*, No. 12-cv-00393-PAB-KLM, 2013 WL 5446791, at *13 (D. Colo. Sept. 30, 2013) (finding proposed tort claims

---

"any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

were futile, but allowing amendment to plead implied covenant of good faith); *Marathon Oil*, 2019 WL 13107380, at *4. *Cf. Alabassi v. Columbia Ins. Co.*, No. 17-cv-00752-RM-MEH, 2017 WL 10591351, at *1-2 (Oct. 30, 2017) (allowing defendant to add affirmative defense that insured breached duty of good faith).

As to the claim for accounting, the parties likewise raise issues concerning the legal merits that are better suited to a dispositive motion. The claim, for instance, does not appear to be one solely for an accounting; it also alleges that Sony breached the license agreement by understating royalties due, thus necessitating an accounting. The additional issue of whether a pre-suit demand was required, and if so, whether Moody can rely on such a request made in the context of settlement negotiations, is also not ideally suited to resolving on a motion to amend. Again, Rule 15(a) does not contemplate resolving factual issues in determining whether the amendment should be granted freely as justice requires. How best to treat this counterclaim is better suited to a direct, dispositive motion on these issues.

In short, this court respectfully finds that Sony's arguments of futility should be addressed directly in a dispositive motion, not indirectly here. While the parties devoted some resources to briefing and obtaining opinions on Spanish law, they will be able to rely—or at least build upon—those efforts if either side pursues these issues in a dispositive motion.

IV. Conclusion

For each of the above reasons, this court GRANTS Defendants' Motion (ECF No. 44) to Amend. Within three (3) business days of this Order being filed, Defendants shall refile a clean copy of their Second Amended Answer with Counterclaims, in both public (redacted) and

confidential versions.[3]

DATED: August 25, 2024

BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[3] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").